UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**04 CV 2402**

-------------------------------------------------

BARTANG BANK AND TRUST CO.,                    :
AVENIL LTD. and TIMBRE INVESTMENT              :
HOLDINGS LTD.,                                 :
                                               :     Index No.
                          Plaintiffs,          :
                                               :     <u>COMPLAINT</u>
                                               :
              -v-                              :
                                               :
KIRILL PERCY, LENARD PERCY,                    :
JOSEPHINE PERCY, BENNY CAIOLA                  :
JACK ROSENTHAL, EDWARD MERMELSTEIN             :
GARY COHEN, SCHISSEL & COHEN, C.P.A. and       :
PROGRESSIVE REAL ESTATE LLC,                   :
                                               :
                          Defendants.          :

-------------------------------------------------x

RECEIVED
MAR 26 2004
U.S.D.C. S.D.N.Y.
CASHIERS

     PLAINTIFFS, Bartang Bank and Trust Co. ("Bartang"), Avenil Ltd.
("Avenil") and Timbre Investment Holdings Ltd. ("Timbre"), by and through
their attorneys Albert Feinstein, Esq., 216 East 49th Street, New York, New
York 10017, and Fox Horan & Camerini LLP, 825 Third Avenue, New York,
New York 10022, as for their Complaint against Kirill Percy ("K. Percy"),
Lenard Percy ("L. Percy"), Josephine Percy ("J. Percy"), Benny Caiola
("Caiola"), Jack Rosenthal ("Rosenthal"), Edward Mermelstein
("Mermelstein"), Gary Cohen ("Cohen"), Schissel & Cohen, C.P.A. ("S&C")
and Progressive Real Estate LLC ("Progressive"), allege as follows:

### PARTIES AND JURISDICTION

1.   Plaintiff Bartang is a corporation duly formed and existing under the laws of the Republic of Nauru, with its registered office at 15 Yaren District, 2nd Floor, Nauru.

2.   Plaintiff Avenil is a corporation duly formed and existing under the laws of the Isle of Man, with its registered office at 6 Victoria Street, Douglas, Isle of Man.

3.   Plaintiff Timbre is a corporation duly formed and existing under the laws of the British Virgin Islands, with its registered office at 7 Valley Road, 6th Floor, Tortolla, British Virgin Islands.

4.   Defendant K. Percy (also known as "Kenneth Percy" and "Ken" Percy), is an individual residing in the City and State of New York. Upon information and belief, K. Percy is, and was at all relevant times, admitted to practice law in the State of New York. Upon information and belief, on or about November 18, 2003, K. Percy pled guilty in this Court to at least one felony count of conspiracy. Upon information and belief, K. Percy's sentencing previously scheduled for February 17, 2004, was adjourned because of his continued cooperation with the government.

5.   Defendant L. Percy is an individual residing in the City and State of New York. L. Percy is the father of K. Percy.

2

6.    Defendant J. Percy is an individual residing in the City and State of New York. J. Percy is the mother of K. Percy and the former wife of L. Percy. (Defendants K. Percy, L. Percy and J. Percy are hereinafter referred to as "the Percys" and "the Percy Defendants.")

7.    Defendant Caiola is an individual residing in the City and State of New York. Upon information and belief, Caiola is engaged in the business of real estate development. Caiola is the father-in-law of Defendant Mermelstein.

8.    Defendant Rosenthal is an individual residing in the City and State of New York. Upon information and belief, Rosenthal is engaged in the business of real estate development.

9.    Defendant Mermelstein is an individual residing in the City and State of New York. Upon information and belief, Mermelstein is admitted to practice law in the State of New York. At all relevant times Mermelstein was Defendant K. Percy's partner in the practice of law. Mermelstein is the son-in-law of Defendant Caiola.

10.   Defendant Cohen is an individual, residing in the City and State of New York. Cohen is a certified public accountant and a partner at the firm of Defendant S&C. Defendants S&C and Cohen maintain their principal place of business at 450 Seventh Avenue, New York City.

3

11.   Upon information and belief, Defendant S&C is a partnership engaged in the practice of certified public accounting, with offices in the City and State of New York.

12.   Defendant Progressive is a New York limited liability company, with its principal place of business in New York. Upon information and belief, Progressive is owned and controlled by Defendant J. Percy.

13.   This Court has subject matter jurisdiction of the present action pursuant to 28 U.S.C. § 1332(a)(1) in that there is diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Plaintiffs are informed and believe, and based thereon allege, that venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

### Establishing the Relationship

14.   The Defendants' conduct complained of herein involves a scheme by all of the Defendants to defraud Plaintiffs of millions of dollars.

15.   Plaintiffs are in the business of investing funds into various markets and ventures with the goal of realizing profits from the appreciation in the values of their investments. Plaintiffs invest into various investment vehicles, such as securities and real estate.

16.   Beginning in 1996, Plaintiffs sought to invest their funds into the U.S. market. For this purpose, Plaintiffs appointed and designated Eugene Ardemasov and Valery Korotkov, both citizens and residents of Russia, as their agents with the powers to make all decisions concerning all investments in the U.S. and the responsibility to periodically report to Plaintiffs on the status of their investments.

17.   While traveling in the United States in 1996 seeking investment opportunities, Korotkov and Ardemasov became acquainted with Defendant K. Percy. K. Percy represented himself to be an experienced lawyer with connections in the financial arena. K. Percy offered his legal and business services to Korotkov and Ardemasov in identifying and structuring various investments in the U.S.

18.   Shortly thereafter, K. Percy introduced Ardemasov and Korotkov to his father, Defendant L. Percy, describing him as an experienced businessman with connections in the business community and a great deal of knowledge of the U.S. market. K. Percy and L. Percy persuaded Ardemasov and Korotkov to utilize L. Percy's services in overseeing the day-to-day activities relating to Plaintiffs' investments in the U.S.

19.   K. Percy and L. Percy also introduced Ardemasov and Korotkov to Defendant J. Percy, describing her as a businesswoman with vast connections in the U.S. business world.

20. The Percy Defendants also introduced Ardemasov and Korotkov to Defendant Cohen and his firm, S&C, representing Cohen to be the Percys' long-standing accountant and financial advisor who was handling accounting matters for several of the Percy Defendants' companies, including K. Percy's law practice, and also for the Percys individually.

21. The Percy Defendants recommended that Cohen and his firm be retained to handle all accounting matters arising out of the formation and management of Plaintiffs' investments. Plaintiffs agreed and, at the end of 1996, retained Cohen and his firm S&C.

22. From that point on, Cohen and S&C handled all accounting matters relating to Plaintiffs' investments, including filing of income tax returns, applying for tax ID numbers, reviewing of financial records and other related work.

23. Over time, Ardemasov and Korotkov developed a close personal relationship with the Percy Defendants, and placed a great deal of trust, confidence and reliance in them.  Unaware of the devious motives of the Percy Defendants, which did not become apparent until much later, Ardemasov and Korotkov agreed to utilize the services of the Percys in overseeing the management of Plaintiffs' investments.

24.   In order to begin Plaintiffs' investment program, in or about July of 1996, Korotkov and Ardemasov told K. Percy to utilize a company named Rombotex LLC, a then existing Delaware limited liability company which would serve as a holding company for Plaintiffs' investments ("Rombotex"). Ardemasov and Korotkov were the sole two members of Rombotex. Rombotex opened a bank account in New York and opened an office at 350 Fifth Avenue, New York City.

25.   Ardemasov and Korotkov, at the urging of the Percy Defendants, hired L. Percy as an employee of Rombotex to oversee the day-to-day investment activities and to report regularly to them on the status of Plaintiffs' various investments.

26.   K. Percy functioned both as investment and legal adviser. Ardemasov and Korotkov placed full and complete trust, confidence and reliance in K. Percy, L. Percy and J. Percy as their legal and business advisors. Neither Ardemasov nor Korotkov speak English fluently and relied on the representations of the Percys, as communicated in the Russian language, concerning legal and investment matters.

27.   From July 1996 through August 1998, Plaintiffs transferred approximately $11.8 million into Rombotex's New York bank account for investment on their behalf. Specifically, Bartang transferred

$6,175,000, Avenil transferred $2,405,000 and Timbre transferred $3,290,000.

28.   From January 1997 through December 1999, Plaintiffs invested into various real estate and other ventures in New York City, including the acquisition of a residential building at 230 East 53rd Street, and the purchase of a one-third interest in a commercial real estate project in the Chelsea district in New York City.   Plaintiffs also invested into various securities through Merrill Lynch.   All of these transactions were conducted through Rombotex as an investment vehicle set up for this purpose.

The 53rd Street Building Scheme

29.   In early 1997, K. Percy informed Ardemasov and Korotkov that his then law partner, Paul Hayt, was offering to sell a mixed-use building located at 230 East 53rd Street, New York, New York, which Paul Hayt had been managing for one of his clients (the "Building").

30.   The Percy Defendants strongly urged Ardemasov and Korotkov to have Plaintiffs invest their funds in the Building.   Each of the Percy Defendants stated that this was an excellent investment opportunity because the Building was selling at below market value.   K. Percy offered to perform all of the necessary legal work.   L. Percy offered to

oversee the management of the investment. J. Percy offered her extensive management and real estate experience.

31.   Plaintiff Bartang agreed to invest in the Building.   In or about February of 1997, the Building was purchased in the name of Rombotex. The goal of the investment was to generate income from the business leases on the ground floor and from rental of the apartments and, ultimately, to sell the Building at a profit.

32.   K. Percy performed all of the legal work in connection with the purchase of the Building.

33.   At the time of the purchase, K. Percy and L. Percy misrepresented to Ardemasov and Korotkov the actual purchase price by approximately $100,000.   Plaintiff Bartang paid $1,450,000 rather than the actual purchase price of $1,350,000, thereby giving the Percys a hidden markup of $100,000.

34.   The Percy Defendants also purposefully concealed from Ardemasov and Korotkov the fact that K. Percy and his mother, Defendant J. Percy, through her company, Deluxe Realty Ltd., received commission fees from the sale, totaling approximately $70,000.

35.   Upon the advice of K. Percy, L. Percy and J. Percy, Ardemasov and Korotkov placed L. Percy in charge of managing the Building, including overseeing collection of rents and maintenance.

36.   From the time the Building was purchased until its ownership was fraudulently transferred by the Percys to themselves (see below), the Percy Defendants and Cohen represented to Ardemasov and Korotkov that the Building's expenses greatly exceeded its yearly rents, and that, therefore, the investment was not generating any revenue. This was false. The Percy Defendants, with the knowledge and acquiescence of Defendants Cohen and S&C, in fact diverted and misappropriated much of the rents that were collected.

37.   In or about October 1999, the Percy Defendants, with the assistance of Defendants Cohen and S&C, formed Defendant Progressive, as a New York Limited Liability Company.   On information and belief, Progressive was owned and controlled by Defendant J. Percy.

38.   At around the same time, the Percy Defendants, with the assistance and acquiescence of Defendants Cohen, S&C and Mermelstein, concocted a scheme to clandestinely transfer the Building's ownership to Progressive, thereby stealing the Building from Plaintiff Bartang.

39.   In or about October of 1999, the Percy Defendants, with the assistance of K. Percy's law partner, Mermelstein (who was Caiola's son-in-law), clandestinely completed the transfer of the ownership of the Building to Progressive.  L. Percy signed the deed to the Building on Rombotex's behalf.  J. Percy purported to act in the capacity of the

President of Progressive, the transferee. Mermelstein notarized the executed deed and also acted as Progressive's attorney. K. Percy arranged to have his law partner, Paul Hayt, act as attorney for Rombotex. Defendant Cohen issued and signed the check from Progressive's bank account for the purchase amount. Defendants Cohen and S&C had previously opened a bank account for Progressive, giving Defendant Cohen signatory rights.

40.  Progressive purportedly "purchased" the Building for $964,000, almost $500,000 less than Plaintiff Bartang paid for it. This amount was substantially less than the market price. Moreover, of the $964,000 paid by Progressive, $275,000 was advanced by K. Percy from the funds he had previously stolen from Rombotex's accounts at Merrill Lynch. Similarly, most of the funds that his mother, J. Percy advanced to Progressive's bank account to complete the purchase were previously stolen by the Percy Defendants from Rombotex's accounts at Merrill Lynch.

41.  Once the "purchase" amount of $964,000 was posted on Rombotex's bank account, the Percy Defendants immediately withdrew the amount for their own personal use. Thus, the Building and Plaintiff Bartang's entire investment in it was stolen by the Percy Defendants, assisted by Mermelstein, Cohen, S&C and Progressive.

11

42. Defendants had never informed Ardemasov, Korotkov or Plaintiff Bartang of the transfer of the Building to Progressive.

43. Each of the Percy Defendants, as well as Defendants Mermelstein, Cohen, S&C and Progressive, knowingly participated in the fraudulent transfer of ownership of the Building to Progressive.

## The Chelsea Gardens Fraud

44. In early 1998, K. Percy and his law partner Mermelstein introduced Ardemasov and Korotkov to Mermelstein's father-in-law, Defendant Caiola, and to Caiola's business partner, Defendant Rosenthal.

45. In early 1998, Caiola and Rosenthal purchased two parcels of property located, respectively, at 147 West 17th Street and 160-164 West 18th Street, in New York City. The properties (the "Chelsea Project") were purchased in the name of Chelsea Gardens Realty LLC, an entity controlled by Caiola and Rosenthal ("Chelsea Gardens").

46. In or about April 1998, Caiola and Rosenthal invited Plaintiffs, through Ardemasov and Korotkov, to invest in the Chelsea Project. The Percy Defendants and Mermelstein strongly urged Ardemasov and Korotkov to have Plaintiffs invest in the Chelsea Project.

47. Plaintiffs Avenil and Timbre agreed to make an investment in the Chelsea Project.

48.    It was agreed that Avenil and Timbre, through Rombotex, would purchase, collectively, a 1/3 interest in Chelsea Gardens for the sum of $2,200,000. Avenil and Timbre paid this sum and thereby purchased a 1/3 interest in Chelsea Gardens. Avenil invested the sum of $1,100,000, and Timbre's invested the sum of $ 1,100,000. On information and belief, Caiola and Rosenthal, through their respective companies, invested the total sum of $1,462,500 for the remaining 2/3 interest in Chelsea Gardens.

49.    Throughout the course of the negotiations concerning the Chelsea Project, K. Percy and his law partner Mermelstein provided legal and business advice to Ardemasov and Korotkov, as agents for Plaintiffs Avenil and Timbre. The Percy Defendants and Mermelstein participated in all discussions and negotiations concerning the Plaintiffs' investment in the Chelsea Project. K. Percy and Mermelstein acted as counsel for Plaintiffs Avenil and Timbre in these discussions and negotiations. The Percy Defendants and Mermelstein also acted as translators and intermediaries between the parties.

50.    In late 1999, Ardemasov and Korotkov were becoming concerned about the conduct of the Percy Defendants, and were becoming suspicious that the Percy Defendants were mishandling the investments and diverting and misappropriating Plaintiffs' funds.

Indeed, as Ardemasov and Korotkov discovered only later, from the very beginning of the relationship, the Percy Defendants were systematically siphoning Plaintiffs' funds from various Rombotex accounts for their own personal use.

51.   In December 1999, Ardemasov and Korotkov began demanding explanations from the Percy Defendants concerning the apparent irregularities in the financial operations of Rombotex.

52.   In December 1999, Defendants hatched a plan to take over Avenil's and Timbre's 1/3 interest (held though Rombotex) in the Chelsea Project.

53.   The clandestine plan consisted of arranging a "swap" of Caiola's and Rosenthal's interest in an entity named Denisovsky Project LLC, a New York limited liability company ("Denisovsky"), for Avenil's and Timbre's interest (through Rombotex) in the Chelsea Project.

54.   Denisovsky was an empty shell; it had no assets whatsoever.

55.   The goal of the scheme was to give Caiola and Rosenthal complete ownership of the Chelsea Project, the value of which, unbeknownst to Plaintiffs, had risen greatly by that time due to a favorable zoning regulation.   K. Percy and L. Percy stood to personally gain by the swift completion of the "swap" arrangement in that they would avoid

14

a claim of malfeasance and fraud by Caiola and Rosenthal arising from Caiola's and Rosenthal's investment in another project.

56.    Defendant Mermelstein, Caiola's son-in-law, was fully aware of the "swap" scheme.

57.    Ardemasov and Korotkov were not advised of the "swap" until hours before the closing, held on December 17, 1999, at the offices of K. Percy's and Mermelstein's law firm.

58.    At the closing, L. Percy, without authorization from Plaintiffs, executed documents that purported to transfer Rombotex's interest in the Chelsea Project to Caiola and Rosenthal. Upon information and belief, the documents were prepared by Rosenthal and Caiola's lawyers. Rosenthal and Caiola knew at the time of the closing that neither the Plaintiffs nor their agents, Ardemasov and Korotkov, had authorized the sale of Plaintiffs' (Avenil's and Timbre's) 1/3 interest in the Chelsea Project.

59.    Caiola testified under oath in an action previously pending in New York State court that immediately prior to the closing, he telephoned Ardemasov in Moscow and informed him of the planned "swap" which was to be consummated that same day. He further testified that Ardemasov told him in that conversation that the Percy Defendants

had no authority to enter into any "swap" transaction on behalf of Rombotex.

60. During the same telephone conversation, Ardemasov stated that neither K. Percy not L. Percy had any ownership interest in Rombotex, despite whatever documents were being presented by the Percys to Caiola and Rosenthal. Nevertheless, Rosenthal and Caiola, knowing that the Percy Defendants were acting without any authorization from the Plaintiffs, or from Ardemasov and Korotkov, proceeded with the "swap" transaction.

61. The result of the "swap" was a complete loss of Avenil's and Timbre's $2.2 million investment in the Chelsea Project. Avenil and Timbre also lost their 1/3 interest in Chelsea Gardens, the value of which had increased greatly due to the favorable zoning regulation. Indeed, shortly after the "swap" Rosenthal and Caiola sold the Chelsea Project for over $12.4 million.

### FIRST CLAIM FOR RELIEF
#### (For Fraud Against Defendants K. Percy, L. Percy and J. Percy)

62. Plaintiffs restate and incorporate all prior allegations as if fully set forth herein.

63. The Percy Defendants committed fraud on Plaintiffs by making material misrepresentations to Plaintiffs' agents, Ardemasov and Korotkov.

64.   K. Percy falsely represented to Ardemasov and Korotkov that the purchase of the Building constituted an investment for Plaintiff Bartang's benefit, and that the Building would be owned by Rombotex until such time as Bartang advised the Percys of its intent to sell or otherwise transfer the ownership of the Building. In fact K. Percy's intended goal was to misappropriate the Building for his and his family's sole benefit.

65.   L. Percy represented to Ardemasov and Korotkov that the purchase of the Building constituted an investment for Plaintiff Bartang's benefit, and that the Building would be owned by Rombotex until such time as Bartang advised the Percys of its intent to sell or otherwise transfer the ownership of the Building. In fact L. Percy's intended goal was to misappropriate the Building for his and his family's sole benefit.

66.   J. Percy represented to Ardemasov and Korotkov that the purchase of the Building constituted an investment for Plaintiff Bartang's benefit, and that the Building would be owned by Rombotex until such time as Bartang advised the Percys of its intent to sell or otherwise transfer the ownership of the Building. In fact J. Percy's intended goal was to misappropriate the Building for her and her family's sole benefit.

67.     Plaintiff relied on these representations to its detriment when it decided to invest in the Building.

68.     By the Percy Defendants' false representations, above, Plaintiff Bartang was induced into purchasing the Building.

69.     The Percy Defendants concealed their true intentions to misappropriate the Building from Plaintiff Bartang and its agents Ardemasov and Korotkov.

70.     Plaintiff Bartang remained in ignorance of the Percy Defendants' intentions to misappropriate the Building until 2000. Plaintiff's lack of knowledge of the Percy Defendants' intentions and misrepresentations is not attributable to lack of diligence on its part. Plaintiff had no access to information that would have enabled it to discover the Percy Defendants' fraudulent intentions until long after the Building was transferred to Progressive.

71.     At the time the ownership of the Building was transferred to Progressive, its market value was not less than $2,000,000.

72.     By reasons of the foregoing, Plaintiff Bartang has been damaged and is entitled to recover from L. Percy, K. Percy and J. Percy the sum to be determined at trial but not less than $2,500,000.

### SECOND CLAIM FOR RELIEF
(For Fraudulent Concealment Against Defendants
K. Percy, L. Percy, J. Percy, Cohen, S&C and Mermelstein)

73.    Plaintiffs restate and incorporate all prior allegations as if fully set forth herein.

74.    At all relevant times herein there existed a fiduciary relationship between Bartang, through its agents Ardemasov and Korotkov, on the one hand, and the Percy Defendants, on the other hand, that created a duty by the Percy Defendants to disclose to Plaintiff Bartang any transaction involving the Building.

75.    K. Percy functioned as Plaintiff's attorney and investment advisor; L. Percy functioned as Plaintiff Bartang's investment advisor, employee of Rombotex and manager of the Building; and J. Percy functioned as its investment advisor.

76.    At all relevant times there existed a relationship characterized by trust, confidence and reliance between Bartang, through its agents Ardemasov and Korotkov, on the one hand, and the Percy Defendants, on the other hand, that created a duty on the part of the Percy Defendants to disclose to Plaintiff Bartang in advance for approval any substantial transaction involving the Building or its revenues.

77.   Plaintiff Bartang trusted and relied on the Percy Defendants to act in good faith and in its best interests in identifying investment opportunities and managing Plaintiff's investments in the U.S, and not to engage in self-dealing.

78.   At all relevant times there existed a fiduciary relationship between Plaintiff Bartang, through its agents Ardemasov and Korotkov, on the one hand, and Defendants Cohen and S&C, on the other hand, that created a duty on the part of Cohen and S&C to disclose to Plaintiff Bartang any substantial transaction involving the Building or its revenues.  Plaintiff Bartang trusted and relied on Cohen and S&C to act in good faith and in its best interests as its certified public accountants and not to engage in self-dealing.

79.   At all relevant times there existed a relationship characterized by trust, confidence and reliance between Plaintiff Bartang, through its agents Ardemasov and Korotkov, on the one hand, and Defendants Cohen and S&C, on the other hand, that created a duty on the part of Cohen and S&C to disclose to Plaintiff Bartang any substantial transaction involving the Building or its revenues.  Plaintiff Bartang trusted and relied on Cohen and S&C to act in good faith and in its best interests as its certified public accountants and not to engage in self-dealing.

80.   At all relevant times there existed a fiduciary relationship between Plaintiff Bartang, through its agents Ardemasov and Korotkov, on the one hand, and Defendant Mermelstein as K. Percy's law partner, on the other hand, that created a duty on the part of Mermelstein to disclose to Plaintiff Bartang any substantial transaction involving the Building or its revenues. Plaintiff Bartang trusted and relied on Mermelstein, as a law partner of its general counsel K. Percy, to act in good faith and in its best interests and not to engage in self-dealing.

81.   At all relevant times there existed a relationship characterized by trust, confidence and reliance between Plaintiff Bartang, through its agents Ardemasov and Korotkov, on the one hand, and Defendant Mermelstein as K. Percy's law partner, on the other hand, that created a duty on the part of Mermelstein to disclose to Plaintiff Bartang any substantial transaction involving the Building or its revenues. Plaintiff Bartang trusted and relied on Mermelstein, as a law partner of its general counsel K. Percy, to act in good faith and in its best interests and not to engage in self-dealing.

82.   The Percy Defendants, Cohen, S&C and Mermelstein, and each of them, owed to Plaintiff Bartang a duty to disclose the impending transfer of the Building to Progressive by virtue of each of them having superior knowledge of the transfer which was not available to,

21

and, indeed, was concealed from, Plaintiff Bartang, and because each of them knew that Plaintiff Bartang was acting on the mistaken belief that it continued to own the Building even after title to it was transferred to Progressive.

83. Each of the Percy Defendants, Cohen, S&C and Mermelstein knew of and was directly involved in the transaction that transferred ownership of the Building to Progressive, an entity controlled by J. Percy.

84. Each of the Percy Defendants, Cohen, S&C and Mermelstein purposefully and intentionally failed to disclose to Plaintiff Bartang the impending fraudulent transfer of the Building to Progressive.

85. Plaintiff Bartang relied on Defendants' nondisclosure of the impending transfer of the Building insofar as it continued reasonably to believe that it was the owner of the Building, and continued reasonably to believe that the Percy Defendants, Cohen, S&C and Mermelstein were acting in good faith as Plaintiff Bartang's legal and investment advisors and certified public accountants.

86. By reason of the foregoing, Plaintiff Bartang has been damaged and is entitled to recover from L. Percy, K. Percy, J. Percy, Cohen, S&C and Mermelstein, and each of them, the sum to be determined at trial but not less than $2,500,000.

22

### THIRD CLAIM FOR RELIEF
### (For Conspiracy to Defraud Against Defendants
### K. Percy, L. Percy, J. Percy, Cohen, S&C, Mermelstein and Progressive)

87.   Plaintiffs restate and incorporate all prior allegations as if fully set forth herein.

88.   The Percy Defendants, Cohen, S&C, Mermelstein and Progressive, and each of them, conspired and agreed among themselves to misappropriate the Building from Plaintiff Bartang, by means of fraudulent misrepresentations, concealment of material information, and the actual transfer of the Building to Progressive.

89.   Each of the Percy Defendants, Cohen, S&C, Mermelstein and Progressive knowingly participated in the conspiracy and the fraudulent transfer of the Building.

90.   Each of the Percy Defendants, Cohen, S&C, Mermelstein and Progressive acted with and in furtherance of a common objective to misappropriate the Building from Plaintiff, Bartang.

91.   By reason of the foregoing, Plaintiff Bartang has been damaged and is entitled to recover from L. Percy, K. Percy, J. Percy, Cohen, S&C, Mermelstein and Progressive, and each of them, the sum to be determined at trial but not less than $2,500,000.

FOURTH CLAIM FOR RELIEF
(For Breach of Fiduciary Duty Against Defendants
K. Percy, L. Percy, J. Percy, Cohen, S&C and Mermelstein)

92.    Plaintiffs restate and incorporate all prior allegations as if fully set
forth herein.

93.    Each of the Percy Defendants, Cohen, S&C and Mermelstein owed to
Plaintiff a duty of loyalty, due care, good faith and fair dealing, and a
duty to refrain from engaging in any self-dealing transactions.

94.    Each of the Percy Defendants, Cohen, S&C and Mermelstein had a
fiduciary duty to disclose to Plaintiff the intended transfer of the
ownership of the Building to Progressive.

95.    Each of the Percy Defendants, Cohen, S&C and Mermelstein
knowingly breached their fiduciary duty to Plaintiff Bartang, and
each knowingly participated in the breach of the fiduciary duty.

96.    By reason of the foregoing, Plaintiff Bartang has been damaged and
is entitled to recover from L. Percy, K. Percy, J. Percy, Cohen, S&C
and Mermelstein, and each of them, the sum to be determined at trial
but not less than $2,500,000.

FIFTH CLAIM FOR RELIEF
(For Unjust Enrichment Against Defendants
K. Percy, L. Percy, J. Percy and Progressive)

97.    Plaintiffs restate and incorporate all prior allegations as if fully set
forth herein.

24

98. By reason of their fraudulent conduct in transferring the title to the Building to themselves, each of the Percy Defendants and Progressive was enriched at Plaintiff Bartang's expense.

99. The circumstances set forth in this Complaint are such that in equity and good conscience the Percy Defendants and Progressive, and each of them, should be required to return to the Plaintiff Bartang the money that was misappropriated from Plaintiff Bartang by the Percy Defendants.

100. By reason of the foregoing, Plaintiff Bartang has been damaged and is entitled to recover from L. Percy, K. Percy, J. Percy and Progressive, and each of them, the sum to be determined at trial but not less than $2,500,000.

### SIXTH CLAIM FOR RELIEF
(For Breach of Fiduciary Duty Against Defendants
Caiola, Rosenthal, K. Percy, L. Percy and Mermelstein)

101. Plaintiffs restate and incorporate all prior allegations as if fully set forth herein.

102. Caiola and Rosenthal, as partners of Avenil and Timbre in the Chelsea project, owed to Avenil and Timbre a fiduciary duty, a duty of loyalty, due care, good faith and fair dealing; and a duty to refrain from engaging in any self dealing transactions.

25

103. By "swapping" Avenil's and Timbre's interest in the Chelsea Project for Caiola's and Rosenthal's interest in Denisovsky, an empty shell, thereby depriving Avenil and Timbre of its entire investment in the Chelsea Project, Caiola and Rosenthal breached their fiduciary and other duties to Avenil and Timbre.

104. By actively participating in the "swap" transaction through falsification of documents and false representations, L. Percy and K, Percy breached their fiduciary and other duties to Avenil and Timbre.

105. By failing to take any measures to stop the fraudulent "swap" transaction while knowing full well that it was taking place without authorization from his clients, and knowing of the damage that the "swap" would cause his clients, Defendant Mermelstein breached his fiduciary duty of a lawyer to Avenil and Timbre.

106. By reason of the foregoing, Plaintiffs Avenil and Timbre have been damaged and are entitled to recover from Rosenthal, Caiola, K. Percy, L. Percy and Mermelstein, and each of them, the sum to be determined at trial but not less than $5,000,000.

## SEVENTH CLAIM FOR RELIEF

### (For Unjust Enrichment Against Defendants

### Caiola and Rosenthal)

107.   Plaintiffs restate and incorporate all prior allegations as if fully set forth herein.

108.   By "swapping" Avenil's and Timbre's interest in the Chelsea Project for Caiola's and Rosenthal's interest in Denisovsky, an empty shell, thereby depriving Avenil and Timbre of its entire investment in the Chelsea project, Caiola and Rosenthal were enriched at the expense of Avenil and Timbre.

109.   The circumstances set forth in this Complaint are such that in equity and good conscience Caiola and Rosenthal should be required to return to Avenil and Timbre the money by which they were enriched.

110.   By reason of the foregoing, Plaintiffs Avenil and Timbre have been damaged and are entitled to recover from Caiola and Rosenthal, and each of them, the sum to be determined at trial but not less than $5,000,000.

## EIGHTH CLAIM FOR RELIEF
### (For Aiding and Abetting a Breach of Fiduciary Duty Against Defendants K. Percy, L. Percy, J. Percy, Cohen, S&C, Mermelstein and Progressive)

111.   Plaintiffs restate and incorporate all prior allegations as if fully set forth herein.

112.   Each of the above Defendants aided and abetted the breaches of fiduciary duties to Plaintiffs set forth in this Complaint.

113.   By reason of the foregoing, Plaintiffs have been damaged and are entitled to recover from each of the above Defendants the sum to be determined at trial but not less than $8,000,000.

### NINTH CLAIM FOR RELIEF
### (For an Accounting Against All Defendants)

114.   Plaintiffs restate and incorporate all prior allegations as if fully set forth herein.

115.   Plaintiffs are entitled to a full accounting from each of the Defendants.

WHEREFORE, Plaintiffs demand judgment as follows:

A.   On the First Claim for Relief, a judgment in favor of Plaintiff Bartang and against Defendants L. Percy, K. Percy and J. Percy, jointly and severally, in the amount to be determined at trial but not less than $2,500,000;

B.   On the Second Claim for Relief, a judgment in favor of Plaintiff Bartang and against Defendants L. Percy, K. Percy, J. Percy, Cohen, S&C and Mermelstein, jointly and severally, in the amount to be determined at trial but not less than $2,500,000;

28

C.   On the Third Claim for Relief, a judgment in favor of Plaintiff Bartang and against L. Percy, K. Percy, J. Percy, Cohen, S&C, Mermelstein and Progressive, jointly and severally, in the amount to be determined at trial but not less than $2,500,000.

D.   On the Fourth Claim for Relief, a judgment in favor of Plaintiff Bartang and against Defendants L. Percy, K. Percy, J. Percy, Cohen, S&C and Mermelstein, jointly and severally, in the amount to be determined at trial but not less than $2,500,000;

E.   On the Fifth Claim for Relief, a judgment in favor of Plaintiff Bartang and against Defendants L. Percy, K. Percy, J. Percy and Progressive, jointly and severally, in the amount to be determined at trial but not less than $2,500,000;

F.   On the Sixth Claim for Relief, a judgment in favor of Plaintiffs Avenil and Timbre and against Defendants Rosenthal, Caiola, K. Percy, L. Percy and Mermelstein, jointly and severally, in the amount to be determined at trial but not less than $5,000,000;

G.   On the Seventh Claim for Relief, a judgment in favor of Plaintiffs Avenil and Timbre and against Defendants Rosenthal and Caiola, jointly and severally, in the amount to be determined at trial but not less than $5,000,000;

H.    On the Eighth Claim for Relief, a judgment in favor of Plaintiff Bartang, Avenil and Timbre and against Defendants, K. Percy, L. Percy, J. Percy, Cohen, S&C, Mermelstein and Progressive, jointly and severally, in the amount to be determined at trial, but not less than $8,000,000.

I.    On the Ninth Claim for Relief, for an accounting against each Defendant;

J.    For punitive damages for Defendants' egregious and fraudulent conduct to be determined at trial;

K.    For attorney fees and other costs of this action incurred by Plaintiffs and for all applicable interest;

L.    For such other and further relief as this Court deems just and proper.

Dated:    March 26, 2004

New York, New York


FOX HORAN & CAMERINI LLP


By: _____

Oleg Rivkin (OR1331)

Counsel for Plaintiffs
Bartang Bank and Trust Co.,
Avenil Ltd. and  Timbre Investment
Holdings Ltd.
825 Third Avenue, 11th Floor
New York, New York 10022
Tel:  (212) 480-4800